UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODRIGUEZ and JOSE DE SANTOS, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>CLEANSOURCE, INC., INTERLINE BRANDS, INC., and DOES 2-100,<br><br>Defendants. | Case No. 14-CV-0789-L(DHB)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND [DOC. 13.]** |

Pending before the Court is Plaintiffs' motion to remand. (*MR* [Doc. 13].) The motion is fully briefed. (*Opp'n* [Doc. 18]; *Reply* [Doc. 19].) The Court finds this motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d.1). For the following reasons, the Court **DENIES** Plaintiffs' motion.

//
//
//

14cv0789L

## I. BACKGROUND

According to the Complaint, Plaintiffs Michael Rodriguez ("Rodriguez") and Jose De Santos ("De Santos") were "hourly paid drivers" for Defendant Cleansource, Inc. ("Cleansource"). (*NOR* [Doc. 1] *Att. 2*, *Ex. A*, ¶ 4.) Rodriguez and De Santos reside in California and "were employed in a non-exempt capacity as an hourly industrial truck worker, industrial truck driver, industrial vehicle driver, and/or industrial worker" by Cleansource. (*Id.* ¶ 22.) Interline Brands, Inc. ("IBI") purchased a substantial amount of Cleansource assets and named CSE Holdings as the successor in interest. (*Id.* ¶ 17.) IBI is "a New Jersey corporation with its corporate headquarters and principal of business in Jacksonville, Florida." (*NOR* ¶ 17.)

Plaintiffs filed a class action complaint pursuant to Cal. Civ. Proc. Code § 382 against Cleansource in San Diego County Superior Court on September 25, 2013 on behalf of all current and former drivers employed by Cleansource since September 25, 2009. (*MR* [Doc. 13], *Att. 1*, ¶ 5.) Rodriguez and De Santos then filed an amended complaint on February 5, 2014 to include IBI as a defendant. (*Id.* ¶ 6.) Plaintiffs allege IBI violated Cal. Lab. Code §§ 203, 226.7 , 512, and 1194; IWC Wage Order No. 9-2001 subsections (7)(a), (7)(b), and 7(c); Cal. Code Regs. tit. 8, § 11090; and Cal. Bus. and Prof. Code § 17200. (*NOR*, *Att. 2, Ex. A*, ¶ 35 (1), (9), (14), (15), and (16).) Rodriguez and De Santos also seek attorneys' fees pursuant to Cal. Lab. Code §§ 218.5, 226(e), and 1194. (*Id.* ¶ 40.)

On April 4, 2014, IBI filed its Notice of Removal asserting that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), enacted as 28 U.S.C. § 1332(d). (*NOR* ¶ 6.) Defendant alleges that the Court has original jurisdiction over this action because "(1) the number of members of all proposed plaintiff classes in the aggregate is at least 100 members; (2) there is diversity of citizenship between Plaintiffs and IBI; and (3) the amount in controversy exceeds $5 million, exclusive of interests and costs." (*NOR* ¶ 14.) The parties only contest the jurisdictional amount at this time.

Rodriguez and De Santos do not provide a specific amount of damages in the Complaint. (*NOR* ¶ 20.) However, Defendant alleges that the "aggregate value of the claims of all Putative Class Members exceeds the $5 million amount in controversy." (*Id.* ¶ 23.) IBI calculated the

amount in controversy for Plaintiffs' first cause of action to be $668,984.84. (*Id.* ¶ 29.) It arrived at $334,492.42 as the amount in controversy for Rodriguez and De Santos' second cause of action. (*Id.* ¶ 31.) The amount in controversy for Plaintiffs' third and fourth causes of action is at least $2,675,939.36. (*Id.* ¶ 36.) Rodriguez and De Santos' fifth cause of action pertaining to inaccurate wage statements totals $389,700. (*Id.* ¶ 38.) Plaintiffs' ninth cause of action for statutory waiting time penalties comes out to $205,072.80. (*Id.* ¶ 39.) Thus, according to Defendant, the total amount in controversy exclusive of attorneys' fees is $4,274,189.42. (*Id.* ¶ 41.) Since Rodriguez and De Santos are also seeking attorneys' fees, IBI calculated the total amount in controversy by multiplying the foregoing amount by 25%, the benchmark allegedly used in the Ninth Circuit. (*Id.*) 25% of $4,274,189.42 is $1,068,547.36. (*Id.* ¶ 42.) This brings the total amount in controversy to $5,342,736.78, which exceeds the $5 million jurisdictional threshold established by CAFA. (*Id.*)[1]

On June 9, 2014, Plaintiffs filed the instant motion for remand. Rodriguez and De Santos argue that Defendant "had to show by a preponderance of the evidence that the amount in controversy exceeded $5,000,000" and "have not satisfied this burden." (*MR, Att. 2*, 1.) Specifically, they argue that IBI's calculation of attorneys' fees at $1,068,547.78, "based exclusively on its conclusion that the Ninth Circuit awards a 'benchmark 25%' for attorneys' fees in class[,]" is "misleading and entirely speculative for two main reasons." (*Id.* at 2.) The first reason is that the calculation "assumes without analysis that the percentage-of-the-fund approach will be more appropriate for measuring attorney fees here than the 'lodestar method'." (*Id.*) The second is that "it disregards the fact that, even if the percentage approach is appropriate here, it would have to show that the 25% fee is reasonable." (*Id.*) Therefore, Plaintiffs argue that if the Court were to subtract the "speculative attorney fee" from the

---

[1] Rodriguez and De Santos' Sixth, Seventh, Eighth, and Tenth Causes of Action seek "additional recovery in the same amounts as under their statutory claims in the First, Second, Third and Fourth Causes of Action for unpaid, regular, overtime and 'premium' wages. Any such additional recovery would significantly increase the amount in controversy, and IBI expressly reserves and does not waive its right to further rely thereon in supporting the Court's jurisdiction over this action under CAFA." (*NOR, n.7.*)

Defendants' alleged total in controversy, the amount in controversy would total ... significantly less" than $5,000,000. (*Id.* at 3.) IBI opposes. (*Opp'n.* 17.)

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Sygenta Crop Prot. v. Henson*, 537 U.S. 28, 32 (2002); *O'Halloran v. University of Wash.*, 856 F.2d 1375, 1380 (9th Cir. 1988). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566; *see also Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *O'Halloran*, 856 F.2d at 1380. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566.

## III. DISCUSSION

CAFA vests district courts with "original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant." *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)) (internal quotations marks omitted). After a plaintiff files an action in state court, the defendant must allege and bear the burden of proof that the amount in controversy exceeds $5,000,000.

*See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Mere conclusory allegations are insufficient. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). The defendant must set forth, in the removal petition itself, the *underlying facts* supporting its assertion that the amount in controversy exceeds $5,000,000. *See Abrego Abrego*, 443 F.3d at 689. "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Furthermore, attorneys' fees are "apportioned to each class member and not simply attributed to the named plaintiffs." *Gibson v. Chrysler*, 261 F.3d 927, 942 (9th Cir. 2001).

### A.     The Preponderance of the Evidence Standard Applies.

Although the defendant bears the burden of proving that the plaintiff's action meets the requirements of CAFA, the court must also consider what level of proof that the defendant must meet. *Lowdermilk*, 479 F.3d at 998. The Ninth Circuit has articulated two pertinent scenarios that dictate what level of proof that the defendant must meet in order to show that the amount-in-controversy requirement has been satisfied. *Id.* (citing *Abrego Abrego*, 443 F.3d at 683). In the first, "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,]" the removing defendant must prove by "a preponderance of the evidence" that the amount in controversy has been met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). And in the second, "when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.'" *Id.* (citing *Lowdermilk*, 479 F.3d at 1000).

Here, Plaintiffs do not expressly allege a specific dollar amount for the amount in controversy or for damages sought. (*NOR* ¶ 20.) Consequently, it is unclear and ambiguous from the face of the state-court complaint whether the requisite amount in controversy has been pled. Therefore, the Court applies the preponderance-of-the-evidence standard. *Guglielmino*, 506 F.3d at 699.

**B.    The Percentage-of-the-Fund Approach is Appropriate at This Point in the Proceedings**

Rodriguez and De Santos first argue that "[i]n the absence of showing the percentage-of-the-fund approach would be an appropriate measure ... for a potential award of attorneys' fees, Defendant is just guessing or speculating as to its application and the Court should thereby disregard it." (*MR, Att. 2*, 8.)  "Bearing the burden of proving the amount in controversy has been met means Defendant had to first show that the percentage-of-the-fund approach would be a proper measure of attorneys' fees here." (*Id.*)  IBI characterizes Plaintiffs' arguments as "nothing more than a disingenuous and bad faith attempt to avoid this Court's proper exercise of jurisdiction over this action under CAFA." (*Opp'n.* 8.)  Further, IBI argues that their argument "is wholly unsupported, and in fact, these issues are only assessed and resolved when a court is determining the propriety of a proposed fee award at the *conclusion* of a class action." (*Id.*)  For the following reasons, the Court finds that applying the percentage-of-the-fund approach to calculate attorneys' fees for purposes of establishing the jurisdiction amount in controversy is appropriate here.

Rodriguez and De Santos are correct in asserting that *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) is "a post-class settlement case, wherein the Court affirmed the district court's final approval of settlement and awards of attorneys['] fees." (*MR, Att. 2*, 7.) Nevertheless, this case is instructive because it "affirm[s] the use of two separate methods for determining attorneys['] fees." *Hanlon*, 150 F.3d at 1029.  The first method is the lodestar method, which is applied in "employment, civil rights, and other injunctive relief class actions because there is no way to gauge the net value of the settlement or any percentage thereof." *Id.* Lodestar calculation multiplies the number of hours expended by attorneys against a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 897 (1984).  The second method is the percentage-of-the fund approach.  This method entails "simply award[ing] the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir, 1989).

The Ninth Circuit has held that "in 'common-fund' cases where the settlement or award

creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." *In re: WA Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1295 (1994). However, "Ninth Circuit law mandates use of the percentage method in common fund cases unless the district court finds 'special considerations' that warrant use of the lodestar method." *Id.* at 1296. The Court does not find any special considerations in this matter. Furthermore, at this stage in the litigation, it is difficult to assess "the time and labor involved, the skill requisite to perform the legal service properly, time limitations imposed by the client or the circumstances" etc., guidelines that assist in the calculation of attorneys' fees under lodestar. *Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Therefore, a percentage-of-the-fund calculation is more appropriate, than using the lodestar approach.

### C. Use of A 25% Attorneys' Fees Benchmark is Reasonable

Next, Rodriguez and De Santos argue that "[e]ven if using the percentage-of-fund approach were appropriate here, fees are not determined by simply multiplying the '25% benchmark' by the common settlement fund." (*MR, Att. 2*, 9.) They contend that IBI must show that "using the 25% benchmark would be *reasonable*." (*Reply* 7.) IBI disagrees and asserts that, use of a 25% attorneys' fees benchmark "is widely accepted and routinely acknowledged by the Ninth Circuit." (*Opp'n.* 9 (citing *Graulty,* 886 F.2d at 272).) The Court agrees with IBI.

Most attorneys' fees awards usually fall within the range of 20 to 30 percent of the common fund. *Id.* However, the court in *Graulty* established "25% of the fund as the 'benchmark' award that should be given in common fund cases." *Six Mexican Workers v. AZ Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). *Six Mexican Workers* further reaffirms 25% as the benchmark when calculating attorneys' fees. *See id*.

The Court notes that *Hanlon* "is not a case about whether the amount in controversy has been satisfied in the CAFA or any removal sense." (*MR, Att. 2*, 7.) Nevertheless, when establishing whether the amount in controversy exceeds the jurisdictional threshold under CAFA, other courts have used the 25% benchmark when calculating attorneys' fees. *See Jasso*

*v. Money Mart Exp., Inc.*, No. 11–CV–5500 YGR, 2012 WL 699465 (N.D. Cal. March 1, 2012); *Marshall v. G2 Secure Staff, LLC*, No. 2:14–CV–04322–ODW, 2014 WL 3506608 (C.D. Cal. July 14, 2014).  In light of the foregoing, the Court finds that using this benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in controversy for jurisdictional purposes.

25% of $ 4,274,189.42, $1,068,547.36, which, when added to the previous figure, produces a total amount in controversy of $5,342,736.78.  This exceeds the jurisdictional threshold for CAFA.  Therefore, IBI is correct that "it is 'more likely than not' that, aggregated, the [drivers] seek an amount in excess of $5,000,000, as required by § 1332(d)(2)." *Abrego Abrego*, 443 F.3d at 689.

## IV.  CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** Plaintiffs' motion to remand.

**IT IS SO ORDERED.**

DATED: August 4, 2014

M. James Lorenz
United States District Court Judge